for the morning, Emmett Greer versus Erie County District Attorney. Good morning, Your Honors. May it please the Court, Michael Burns from the Erie County District Attorney's Office representing Defendant Appellant Jack Dennery, District Attorney for Erie County. With the Court's permission, I'd like to reserve two minutes of rebuttal time. Thank you. In addition to my brief, I would like to make two main points. Obviously, we're asking the Court to reverse the judgment of the District Court, and I'd like to make two main points. The first one is that with all due respect, we believe that Magistrate Judge Baxter misinterpreted Judge Dimitrovich's ruling with regard to Mr. Greer and that her characterization of the effect of the Godshot case in this, the effect of the Godshot case was not accurate. Judge Baxter suggested in her opinion that by confessing to these crimes that Mr. Greer relinquished any future interest in access to DNA, that he was subject to an absolute prohibition on access to DNA, and we just respectfully disagree with that. First of all, Godshot does not impose an absolute bar to DNA access. If there were an absolute bar, the standard would be basically that you are not entitled to, you would not be entitled to access to DNA under any circumstance. It's an absolute bar if you confess to the crime. Isn't that what Godshot stands for? I'm sorry? It's an absolute bar if you confess to the crime. Isn't that what Godshot stands for? We don't, we would respectfully disagree with that, Your Honor. We don't. Have you put this in your brief? Yes. That you disagree with whether it's an absolute bar? Yes. Okay. Yes, yes. No, the, what Godshot says, the petition for DNA access will be granted, it will be granted under certain circumstances, and what it basically says is, yes, you can have access to DNA, but you have to meet certain requirements, and that's basically what Justice Roberts said in the Osborne case. But the case says if you confess to the crime, then you don't have access. What is the district court wrong? Well, we, what Godshot said was that you can have access to the DNA if the conviction, one, if the conviction was based largely on identification evidence, and two, if the DNA evidence could establish the defendant's innocence. So there is a process there. There's a procedure. There's a requirement that he has to follow, that he has to, that he has to satisfy. It may be a stringent requirement, but it is, it does not constitute, in our view, an absolute bar. Secondly, Judge Baxter said that there, or she suggested there is an explicit prohibition here that you can. But I, isn't that what you're hanging your whole argument on? He has confessed to the crime, he has no right to DNA evidence, isn't it? No, no, Your Honor. Okay. What are. Maybe you can clarify. The substance of our argument is that he had a process, he had a procedure. It may have been a stringent process, but as the Supreme Court has said, the, after you've been convicted, after you've been found guilty, and the conviction is valid, the requirements for access to DNA evidence are more stringent. Now the other thing is that, again, Judge Baxter said, suggested there's an explicit prohibition here. But again, you can get the testing if you meet all the statutory requirements. Secondly, Judge Dimitrovich had a hearing. In fact, she had two PCRA hearings under Section 9543. She reinstated the Mr. Greer's appellate rights. She held an evidentiary hearing, and at that hearing, she stated that the defendant had failed to demonstrate that he had requested counsel to pursue DNA evidence. But then Judge Dimitrovich went on. She said, assuming arguendo that he did make that request, that he simply in his PCRA petition made the bold statement that the evidence would be exculpatory. And what Judge Dimitrovich suggested was, he's got to do more than that. He can't just say, I'm innocent, and this evidence will prove my innocence. In other words, he satisfied prong two, but he didn't address the identity issue. Correct. In fact, Judge Dimitrovich said that he... Let me just stop you for a minute, because what standard of review are we to apply to Judge Dimitrovich's finding, or what should the district court have applied to her finding that it was not credible that he had asked counsel to get the DNA, the rape kit at trial? What standard should the court apply? Should the federal court defer to that? Is there a presumption of correctness on this case? I mean, it's a 1983 case, so it's not really an EDPA case, but what are we to make of that? I mean, it interested me that this, you know, I thought, well, why didn't he get it at trial? And apparently he claims that he asked his lawyer to get it, but his lawyer said, no, we strategically, I guess for strategic reasons, I don't remember the details of that. That's correct. His lawyer, James Petoniak, said, I discussed it with him and he and we made the decision not to seek it for strategic reasons. And Judge Dimitrovich had cited that. And in fact... Was that... Did the district court err in not deferring? What did the district court do with that factual find, if anything? Well, I believe that the district court basically overlooked that because the, again, Mr. Greer, I don't believe, satisfied the requirements under Gottschalk. And that's what Judge Dimitrovich said in her opinion. And she also, she discussed the three incidents. She said that with regard to the June 1998 incident, the testing would not rule out the November 1998 incident. She said that there was no DNA because there was an attempt at rape, but there was no rape committed. And that with regard to the August incident, that Mr. Greer admitted that he had had sexual relations with the victim and therefore that identification was not an issue. So the suggestion that Judge Dimitrovich did not allow... Why couldn't it rule him out for the first incident? Yeah, exactly. The testing, the testing would not rule him out because of the semen stains that were found on the sheets. That those, the holding was that those could have been, those could have been deposited by the victim's husband. No, that just doesn't matter. If it's different from the third, if you have the testing as to the third, where there definitely was a rape or consensual sex, which definitely was his DNA, and then you compare it to the first and it's different, sheets don't matter, do they? Well, arguably, that's a valid... He doesn't contest the third. Pardon me? He does not contest the third. He does not contest the third, that's correct, yes, he admitted that they had sexual relations. But the point is, I believe, Your Honors, that Judge Dimitrovich, although the, although he did not win, afforded him process and procedure. She didn't just say, you confess, therefore you automatically don't get the DNA. She discussed the, she went through the process that is provided in Gottschalk and, and discussed the, the evidence and concluded that Mr. Greer did not meet the requirements set forth in Gottschalk. Is that, is that the argument that you presented to the District Court or was your argument to the District Court that there was a confession and the confession bar prevents him from access to DNA? I argued to the District Court and, and keep in mind, Your Honor, that the, the District Court, the, the format of that argument was that Magistrate Judge Baxter was asking questions rather than, we, we didn't, we didn't really present argument rather we, we responded to her questions. You supplied a brief to, you supplied a brief to the court. What was the thrust of your argument to the District Court in your brief? Well, the thrust of the argument was that, that, again, that the confession, and I argued this during, during oral argument, that the confession was not an automatic bar, I believe, and that's, that's the same argument, I'm making the same argument today, that, and that, that leads to my second argument which has to do with process. Isn't it, couldn't it not a confession be identification evidence? Is it not identification evidence? Well, I think... Because the identity of the person is at, at issue, it's not a situation where you know who it was, and so by virtue of his having confessed, he has self-identified, isn't, isn't that really the same? It could be. I think that when we talk about identification evidence, typically we're talking about another eyewitness identifying the defendant in court and saying, that's the person who did it. Well, that doesn't, I mean, it doesn't say eyewitness testimony, it says identification evidence. I mean, for instance, the third issue, the third incident, there was no identification issue, it's a matter of consent. But here, it's a, you know, whodunit, and he says, I did it, definitely at issue, isn't it? Well, with regard to the third incident, he says, we had sex, but it was consensual, so I didn't do it. And with regard to the first two incidents, he says, I didn't do it. Well, but it wasn't, it wasn't me. It wasn't me. Right. It's not as to who did it, or that he did it, or he did, or he didn't do it, it's definitely him. But the first, the issue is, who did do it? Yes. The first two, the issue is, yes, who did it, and the third is, well, we had sex, but it was consensual. So you say that the fact that he confessed would not, should not have barred him, and did not bar him from access to DNA? We don't believe it did, Your Honor. Again, under Gottschalk, and that leads to my second point, which has to do with process, that Gottschalk had set forth criteria. If he meets the criteria, he gets the evidence, and we don't believe that he met the criteria. And interestingly enough, subsequent to Gottschalk, as we're all aware, Pennsylvania enacted Section 9543.1, and those requirements are more. What was the criteria that he, well, maybe I should hear from the other side, and they'll tell me if he did or not. But, you know, it seems to me that given a case of identity, and given the fact that there is a discrepancy in the identity, the victim herself identified the attacker as being 47 years old, black male, with other features and characteristics that I need not mention. But Greer is a 27-year-old male that apparently she knew because he was living with or married to her daughter. So there's a big discrepancy in the identification. Under those circumstances, couldn't the government just say, all right, let's settle this once and for all? I mean, the object of the government of the Commonwealth Attorneys is to do justice, the underpinning of Brady. So let's get it right. Agreed. But the reason, but again, the reason for that is, Judge, that once you've been convicted, the requirements for getting DNA access are more stringent. Mr. Greer could have. And I would ask, why didn't Mr. Greer file a petition under 9543.1? He could have, but he chose not to do that. The old law under Gottschalk, I would argue, is less stringent. And Judge Baxter says that as applied to Greer, it is unconstitutional. So if Mr. Greer were to, theoretically, if he were to apply for, file a PCRA petition for DNA access under 9543.1, he would have to establish that the identity of the perpetrator was at issue, and two, that DNA testing would establish his actual innocence. And I suggested that to Judge Baxter in my oral argument. I suggested that if you find in favor of Mr. Greer in this case, what's to stop other appellants or defendants from challenging 9543.1, which is more stringent than Gottschalk? And Judge Baxter's reply was, that's my concern. And again, we still have a valid confession. Mr. Greer has made no effort to try to invalidate that confession. He hasn't filed a habeas petition or any appeal in state court to try to invalidate the confession. The confession still stands. And Mr. Greer says that the DNA evidence could exonerate him, but he doesn't tell us how. He just says that if the DNA is exculpatory, that both, in his words, both of the 19- Isn't it obvious, I mean, maybe I don't know enough about how the forensics, but isn't it obvious as to how it would exculpate him? I mean, if a rape kit was taken after the first rape, and the DNA that shows up is somebody else's and excludes him, wouldn't that exculpate him? Not from the commonwealth perspective, Your Honor, because just because, even if the DNA is not his, that doesn't automatically exculpate him, as I think as we have said, and I think this court has said. Well, then there's some deficiency in the rape kit then, right? Can you explain, educate me, us, on how that works? I mean, I thought the point of the rape kit is you've got some sort of bodily fluids or other physical evidence from the victim that was put onto the victim by the perpetrator. Correct. Is that the way you get convictions in these cases? Correct, that's one way. Is there any mention that there was someone other than the perpetrator who had sex with her at the time, that therefore the rape kit would be inconclusive? Right, well, the point is that even if it's not Mr. Greer's DNA, that doesn't automatically exculpate him because the victim could have had sexual relations with someone else. Well, wait a minute. Do we know- Well, where's the evidence of that? That could be the case in every DNA. Say, oh, well, we can't trust the DNA, because, I mean, do you know that? Well, I think, no, we don't know that, but I think our point is we still have a valid confession, so our position is- That's circular, though. I was focused on the issue of exculpation, and I don't, I'm still not understanding why, if the Commonwealth has in its possession DNA evidence of the first rape, it seems to necessarily follow that that would either inculpate, exculpate or perhaps be inconclusive vis-a-vis Mr. Greer. Is that not right? It could, but, and I think I understand what the court is saying, is it doesn't matter if he confessed or not. We have DNA evidence which may or may not exculpate him, so why don't we just hand it over? And the answer to that is Osborne, and McKithen followed Osborne. Well, all right. I understand your legal argument, but the practicalities of this are curious to me, too. Can you shed some light on, you know, what's the harm? The law is Pennsylvania in respect to this confession bar, and I understand your argument that it's not an absolute bar. There's a way to satisfy it. I understand that. But Pennsylvania was a bit of an outlier by having this in the first place. It has since altered its rule. This is in essence a legacy case is what I'm suggesting to you. Is that fair? I'll go along with that. All right. So what's the harm in turning it over? It's not as if we're going to create some sort of floodgates problem for the Commonwealth. I mean, why not? I'm just puzzled. It doesn't make a huge difference for him in terms of his sentence. He's been in for, what, 12, 13 years. I mean, even, my point is, even if you're, let's assume for a minute you're right on the law. You know, let's assume you've got technically a good argument. You know, the Commonwealth's job is to make sure you get good convictions, not bad ones. Why not turn this over? Well, I think, again, Your Honor, it's because that if we let Mr. Greer have this evidence without meeting the requirements, I think we are, we may be opening the floodgates to other defendants coming forward and saying, well, you found that Mr. Greer was denied his constitutional rights and the right to due process. So I am innocent and I want my DNA evidence. The point is he had the opportunity to do that pre-trial and he turned it down. He made a conscious strategic decision to turn it down. And the fact of the matter is under Osborne that the right to access to DNA evidence is more limited now. Well, you haven't contended on appeal that Judge Baxter should have applied the Osborne test. I mean, Judge Baxter said you get the DNA. That's the remedy I'm giving. You know, what you're saying to us now is, well, she probably should have made him jump through the hoops of the Pennsylvania statute. But you haven't said that on appeal. You have not complained of her giving the DNA as a remedy. Well, with due respect, Your Honor, I believe that we did state in our appeal that the Osborne case controls and that that, in fact, Judge Baxter admitted that it controls. And yet she seemed to go the other way. That's what perplexes us. Well, that's with respect to the merits as to whether there was a constitutional violation. But you haven't said to us that she was wrong in opening and saying you get DNA as compared to you need to jump through. I understand. I think the issue is process and simply the right to request access to the DNA. So you might get a ruling that you really don't like here. Your floodgates problem might be in getting a decision rather than just turning it over in this case. Exactly. So your argument, maybe I misunderstood, but your argument in the district court was he had adequate state process and failed to take advantage of it. Not that he confessed and that was the end of the matter. It was instead the process that was available to him, he failed to take advantage of. That was your argument to the district court? Yes. And that under Osborne, the process that he was entitled to and that he got was adequate. That he is entitled to access, to request access, nothing more than that. That's all the Constitution requires. He had a process. He had a procedure. That's the fundamental right that he has post-conviction and our position was that was given to him. And under Osborne, he does not meet the standard for access to DNA evidence. The McKithlin Court agreed with Osborne's, followed the decision in Osborne. That's our position that this court should do likewise. Thank you. Oh, I'm sorry. More questions? No, we'll get you on rebuttal. May it please the Court, Charles Katubi from Jones Day for Appalachia, Emmett Greer in this case. Let me clear up one discrepancy here regarding what the appellants argued below and argued to this court. And if I can quote from their brief, they said the same thing in their brief below. Mr. Greer, quote, was not entitled to post-conviction DNA testing pursuant to Pennsylvania case law that prohibits convicted defendants from gaining access to DNA evidence when the conviction is based on a voluntary confession. This appears in their brief to this court at page 7 and at paragraph 10 in their motion to summary judgment to the court below. The sands are shifting then. The sands are indeed shifting. Why is that statement inconsistent with the notion that there are exceptions if identity is at issue and it could exculpate you? I don't see those as contradicting what you just stated. Well, he stated here in our argument before this court that he believed that there was no confession bar in Pennsylvania law. And I take serious issue with that. He just said it's not absolute. It was absolute at the time. And that's our contention. I mean, indeed, the rule was announced in Godshock, which was applied to this case. It was then reaffirmed in Commonwealth v. Young in 2004. And it took a case to go the whole way to the Pennsylvania Supreme Court just last year in Commonwealth v. Wright to expressly overturn the confession bar under Pennsylvania law. But Godshock specifically said that it's a bar when the confession rested largely on identification evidence. That's a little different. The identification evidence prong of Pennsylvania law derives from the Bryson case. The Bryson case was decided in 1995. And the Bryson case said, very simply, you can get DNA evidence post-conviction in Pennsylvania courts if you satisfy two prongs, identification evidence, that the conviction rests on identification evidence, and that the DNA can exculpate you. What the Pennsylvania courts did after that in Godshock and Young and so forth, they said, well, if there's a conviction, it doesn't rest on identification evidence. It rests on... If there's a confession. If there's a confession, I'm sorry. It doesn't rest on identification evidence. It rests on the confession. So you don't get it. And it took the Pennsylvania Supreme Court in Wright last year to say that's not a correct interpretation of that term. But that's actually what Judge Dimitrovich did say. She said the conviction rests not on identification but on two voluntary confessions. So isn't the problem here that they're construing identification evidence to exclude confessions? I think that's precisely it. So when there's a confession on record... Does that rise to a constitutional issue? Well, it does in a case like this. What it does is... Because Osborne said it's okay that you say that it has to rest on identification evidence. So here all the court is doing is construing it. Well, what the Pennsylvania courts did was, in construing that, was they made a rule. It resulted in an absolute rule of a confession bar. For individuals like Mr. Greer, who had previously confessed to their crimes of conviction, it operated as an absolute bar on receiving post-conviction DNA evidence in state court. And what Osborne said... And let's not forget the broader paradigm here that's evolved in the last few years. Osborne said quite clearly that federal courts may upset a state court's post-conviction relief procedures when those procedures are fundamentally inadequate. But the procedure was pretty much like the Alaska one in Osborne. So the Supreme Court would have said that this... It has to be identification evidence that would have passed muster. I'm just wondering whether the subsidiary issue of confession doesn't equal identification rises to the same level. Well, in the Alaska law, there simply was no confession bar. Mr. Osborne had confessed. And the Alaskan courts put the confession in with all the other evidence and said, well, in this situation, I don't think he can prove that the DNA evidence will exculpate him. Now, Osborne was different. It was a multi-perpetrator rape case. The DNA evidence was found in a used condom at the scene of the crime several days later. And the Osborne courts... And there was other eyewitness evidence putting him at the scene of the crime. This is a unique situation here. The first two rapes we're talking about, no one puts him at the scene of the crime. In fact, there are alibi witnesses saying he was not there. The victim never saw the perpetrator. So she really couldn't identify him. So you're arguing that in this situation, when you look at it, the confession was identification evidence. And that's really the problem here. It's not that it needs to be identification evidence. It's the construing of identification evidence in this specific case as not including the confession here because identity was at issue. I'm not sure if I'm following Your Honor here. We're saying that the Pennsylvania court's construction of the Bryson standard resulted in an absolute rule being applied. So the Pennsylvania procedures... Even if we accept that argument, what principles so rooted in the traditions and conscience of our people did that confession bar violate? I think we can look at Medina and its progeny to see how that works. Look at Cooper's... I'm not asking you to cite case. I'm asking you what principle is so rooted... This is the test, right? We all agree. There's an or test in Medina. It's principles rooted in the historical principles here. And Judge Baxter didn't really look at that simply because DNA has only been around. I didn't see her identifying what this principle is. It allows you to get a constitutional right here to prevail. There's an or in the test in Medina. The or is or transgresses some fundamental principle of fairness in operation. And the point here... What's that fundamental principle of fairness? That the state has provided a post-conviction relief procedure and then denied access to certain individuals on an unreasonable basis. Simply stated, the Supreme Court has said recently that a frighteningly high number of people confess to crimes they don't commit. And how do we know that that's fundamentally unfair? What's the history or case law? Or is your argument that there naturally wouldn't be any because we're in new scientific territory? I don't think there's any historical basis here. Because we're in new scientific territory. And that's what Judge Baxter said. Then what's fundamentally unfair about saying to a defendant accused of a crime where that defendant knows full well that there is physical evidence? If you want the physical evidence, you get it at trial. What you don't do, because there's something fundamentally unfair to the Commonwealth, what you don't do is make a strategic or other decision not to get it. Roll the dice, wait and see what happens, and then if you don't like the result, then you come back later and say, just kidding, now I'd like to get that. There seems something fundamentally unfair about that. This is Judge Alito's concurrence in Osborne as well. And here's the answer to that. Pennsylvania law, pre-statute, when Mr. Greer was tried, convicted, and saw its testing, set this system up. There was no requirement in Bryson and in Godschalk that you don't get DNA testing post-conviction unless you saw it at trial. So if a strategic decision was made, and there's some factual dispute whether that is the case, we simply cannot fault Mr. Greer for making such a decision because that's the system that Pennsylvania law set up. And we especially cannot deem him to have waived... You're saying the system invited him to bypass his opportunity to get it at the most meaningful time, namely when the jury was looking at the evidence? The rules of Pennsylvania at that time were only two-pronged, that identification be an issue, that identity be an issue, and that the DNA can exculpate you. Well, that would be after trial. Right. But it didn't say you had to have requested it earlier, you said. It did not say. So we can't deem him to have waived his post-conviction liberty interest by virtue of making a decision at trial that he was allowed to make. This is Herring v. Proceeds. That's fine, fine. Maybe he didn't waive it. But what makes it... If he has a plenary opportunity to get it at the most meaningful time, and he bypasses that, what's fundamentally unfair about narrowing his window for getting it at a less important time, namely after all the work has been done and the jury has rendered its verdict? I take your point, and I think that we have to look at this also in historical context. This was 1999 and 2000 when he was tried and convicted. And at that time, DNA evidence was just in its infancy. Today... Maybe that's why they don't want to turn it over. Maybe they're concerned about the quality of their rape kits or something. And that may be the case, but we have the science now to determine what is an inconclusive test and what is a conclusive test. And there's simply also no floodgates argument here. I mean, this is, as Your Honor said, it's a legacy case. There's... This is only going to impact Mr. Greer and Mr. Greer alone. We're challenging a procedure. Or people convicted in the era when he was convicted. Right, but such... Where their DNA... Such people, the statute of limitations has already passed on bringing a 1983 claim. Mr. Greer is the only person to have ever challenged the pre-statutory Pennsylvania procedures that were in place at the time. This is a one-off case. Can I back up? I'm looking at Judge Dimitrovich's ruling here. Mm-hmm. And she says, as in Galshock, defendant's conviction rests not on identification evidence but on the two voluntary confessions that he gave. So she was permitting of the notion that there could be, if it were identification evidence, that would be permissible. But she's construing it as not including a confession. Are you saying that is a confession bar? We're saying that is the... That is a statement of the confession bar. That when a confession is on... Or is it a construction... Well, to be sure, this is a judge-made rule. This wasn't a statutory rule. And there it also goes to the federalism points. We're not asking this court to strike down a rule that was created by the Pennsylvania legislature. We're asking them to declare unconstitutional rule that kind of just... Ran away. Yeah, it developed and ran away under Pennsylvania state law and it took 11... How many years until last year to correct? Indeed, eight years after Mr. Greer filed this action in this court seeking to vindicate his constitutional rights that he lost in 2004. And that's a significant inequity of this case. He's been seeking for almost a decade to vindicate the liberty interests that he had in meaningfully accessing the state's post-conviction relief procedures that were provided to him. For almost... For over a decade, the Commonwealth has kept that DNA. DNA which can definitively prove his innocence under wraps. There's a fundamental inequity at stake here. And to say that we should... How do you know it can definitively prove his innocence? Well, the rape kit, first of all, was taken from the victim in the first instance. If we compare the results from that rape kit from modern science to my client's DNA now, it can show whether he was the perpetrator of the crime. The DNA test will show... How do we know that? Doesn't it depend upon when the rape kit was taken, how it was taken, the accuracy of it, with whom the victim might have had intercourse around the same time? There's no... The possibilities seem numerous. The DNA test is going to show a few things. It'll show, obviously, the victim's DNA. It might show other DNA. If that other DNA is Mr. Greer's, we know he did it. If it's not Mr. Greer's, there's a significant probability... We don't know he did it because maybe he had consensual sex with her the day before that alleged... that rape. Well, there's certainly nothing in the trial record. I would assume that would have came out. Another point that the victim was married but her husband was out of town for the entire week that the rape occurred. So it's very, very high probability that the DNA testing will show whether he did it or not. As Your Honor, Judge Fuentes noted in the Supreme Court noted in United States vs. Brady that the government wins its point when justice is done in its courts. When a state rule is intransigent and indifferent to that salutary aim, federal due process has a role to play. Simply stated, federal due process demands more than Mr. Greer got in this case. If there's any more questions, I'll yield the remaining hearing. Hold on. You're telling us that if you get access to the rape kit for the first rape and Greer's DNA is on it, you're saying you have no argument. You say he's guilty indubitably. And I find that hard to believe because putting on my criminal defense lawyer hat, I didn't do much of that work but I did a little. I think my argument is not that my client's guilty. It's well, his DNA is there but he's had sex with the woman on other occasions. It was consensual. He so testified. I don't think there was any testimony. But it's not indubitable proof that he raped her on the first occasion, is it? Well, pretty soon you line that up with the confession. Well, we already have a conviction so the only possibility is that it is not there. That's exactly it. And if his DNA is not there it automatically exculpates him? I would say yes. Could it be that there was human error in the collection of the rape kit either in time, location, process, et cetera? Well, that human error would have to be that they took we know that the rape kit was taken that night, the night of the rape. Do we know what's in the rape kit? You don't. You know nothing about it. It's a black box. And that's part of the point. What happens practically if we do agree that he should have access to the DNA and the DNA let's say is somewhat conclusive or exculpates? What do you do? Go back to the state court? What usually happens in that case and it's happened almost 300 times in the past. Let's say it's not clear that he can be exculpated. Well, then it would be up to our client and us whether that's enough to go back to the state court and file another PCRA petition. But ultimately it would have to go back to the state. Oh, absolutely. Absolutely. The way this usually happens, this has happened 300 times in the past 10 years or so since DNA has come to the fore is that if it's exculpatory you go back to the state and something is usually worked out where the charges are dropped. Failing that it's a state PCRA petition challenging the conviction under actual innocence. Failing that it's clemency. Failing that you have a federal habeas claim under actual innocence which is a very murky area but that's how it proceeds. It would go out of federal court and go back to the state with significant evidence to show that we got the wrong guy here. Thank you. Jones Day has taken this pro bono? We were appointed counsel by the court when this case was before on the HEC bar. We continued with Mr. Greer pro bono after that. Thank you. We appreciate it. Just a couple of brief points on rebuttal Your Honors. First I think the and most importantly again there's a suggestion that it was asked how can the DNA evidence definitively prove Mr. Greer's innocence? I think the answer is clearly no as I've said before. And then the response to that was how can it prove his innocence? Well it can show if he was the perpetrator. And again as has been stated the DNA evidence even if the DNA belongs to someone else does not necessarily God himself the case that set up the confession bar finally got DNA and was exculpated. Are you telling me the DNA from this rape kit does not match Mr. Greer that the Commonwealth then is going to take the position oh this there's something I mean isn't what happens here that it is exculpatory? Well obviously we don't know. If the first of all if the rape kit will yield any viable evidence and if it does No I know but I mean if it is you know this is there is plenty of sample et cetera et cetera there's two results  can be released because we have to confession but the DNA if the DNA There are confessions confessions can be voluntary but wrong These But whether I mean it might exculpate him, right? It might It depends on the nature and quality of the evidence, doesn't it? In part, yes. Which no one knows about because the testing hasn't been done. The testing has not been done, yes. But I think for the magistrate to make the logical or the leap that because the because it's not unheard of for innocent people to confess that the automatic confession bar is a flaw in her logic. What about would you address what Mr. Katoubi said about this being a one-off case? He seemed pretty confident that when you combine the statute of limitations how do you respond to that? We don't believe so because if the court rules in Mr. Greer's favor again with the provisions of 9543.1 which are currently in effect and that's a more stringent standard if this court finds that the Gottschalk standard was unconstitutional then again I think that it's quite possible that other defendants could come forward and say The Gottschalk standard doesn't exist anymore does it? Wright pretty much said in fact criticized Gottschalk. Yes, yes. The current standard is 95. Why are you worried about Gottschalk? It doesn't exist anymore. There is no confession bar anymore is there? There is no automatic confession. So you look at whether it's identification evidence and under Osborne that's permissible and confessions there can be identification evidence can there not? Even with a confession? Yes, there can be but the Osborne standard I think again the magistrate said Osborne controls this case and I believe that it militates a finding in favor of Mr. Deneary. Again Mr. Greer had processed under Gottschalk he had a procedure that's all that the Constitution requires that is what is fundamental at this point. All right counsel with your permission we'd ask you to approach the  Thank you.